1

2

3

4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7    JEFFREY M. JONES, et al.,                Case No.  21-cv-04172-DMR

8                    Plaintiffs,

9            v.                               **ORDER ON MOTION TO DISMISS**

10   STATE FARM GENERAL INSURANCE             Re: Dkt. No. 12
     COMPANY,
11
                    Defendant.
12

13          Plaintiffs Jeffrey M. Jones and Shannon B. Jones, Trustees of the Jeffrey & Shannon Jones

14   Trust (the "Joneses"), filed a complaint against Defendant State Farm General Insurance Company

15   ("State Farm") alleging claims related to 2017 landslides which damaged their property.  State

16   Farm now moves pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss

17   the complaint.  [Docket No. 12.]  For the following reasons, the motion is granted with leave to

18   amend.

19   I.     **BACKGROUND**

20          A.     **Factual Background**

21          Plaintiffs make the following allegations in the complaint, all of which are taken as true for

22   purposes of this motion.[1]  The Joneses bought real property located at 5945 Bruce Drive in

23   Danville, California (the "Jones property") in 2016.  Compl. ¶¶ 1, 13.  Tzen-Wen Guo and Bihwan

24   Lin own the neighboring property at 5950 Bruce Drive (the "Guo/Lin property").  *Id*. at ¶ 1.  In

25   December 2016, "earth movement started occurring" from the Guo/Lin property towards the Jones

26

27   _____

28   [1] When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all
     of the factual allegations contained in the complaint."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)
     (per curiam) (citation omitted).

United States District Court
Northern District of California

United States District Court
Northern District of California

1  property, and in February 2017, there were two separate landslides from the Guo/Lin property

2  onto the Jones property, the "East Slide" and the "South Slide." *Id.* at ¶¶ 14-16.  Both landslides

3  resulted in significant damage to the Jones property. *Id.* at ¶¶ 17-18.

4       In March 2017, Contra Costa County instructed Guo and Lin to "obtain a geotechnical

5  review of [the Guo/Lin property] . . . to determine what measures may be necessary for [Guo and

6  Lin] to stabilize and remediate the hillside to prevent further sliding and damage to the" Jones

7  property. *Id.* at ¶ 19.  Plaintiffs allege that Guo and Lin "failed to address the situation," and that

8  Plaintiffs then "undertook removal of the dirt" on the Jones property.  However, upon removal of

9  the dirt, "dirt from the slide resumed flowing down the hill causing more damage." *Id.* at ¶ 20.

10       Plaintiffs allege upon information and belief that in March 2017, Guo and Lin notified

11  their liability insurer, State Farm, of the landslides.  They allege that "[f]rom that point in time,

12  according to [Guo and Lin], State Farm took control of the" landslides, "preventing" Guo and Lin

13  "from remediating" the landslides, and "making decisions concerning [the landslides] and their

14  remediation." *Id.* at ¶¶ 21, 22.  "Once State Farm took control of the slides, it undertook

15  obligations and duties to the Joneses outside the scope of an insurer and as an independent

16  tortfeasor." *Id.* at ¶ 22 (citing *Teague v. Home Ins. Co.*, 168 Cal. App. 3d 1148, 1153 (1985)).

17       Plaintiffs allege that in a deposition, Guo testified "that he has not repaired the East Slide,

18  because the 'insurance company [State Farm] took over the matter,' so he no longer took

19  responsibility for it"; that "State Farm hired experts, and contractors"; and that "[a]s a result of

20  State Farm's actions," Guo "'didn't really pay attention to—that,' because State Farm had taken

21  control of the situation."  Compl. ¶ 23.  According to Plaintiffs, "[i]t is clear from his testimony

22  that Mr. Guo firmly believes that State Farm took control and management of the slides."  They

23  further allege that Lin testified in a deposition that "[w]e turned the matter to the insurance

24  company," and that "the insurance company was 'resolving the issue, so we shouldn't do anything

25  else.'" *Id.*  Lin also testified "that the insurance company had taken control of the matter and she

26  was not required to do anything further," and that she was unaware of the voluminous

27  correspondence between Shannon Jones and Lin's attorneys regarding ongoing issues with dirt

28  movement and the hill. *Id.*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

Plaintiffs further allege that defense counsel appointed by State Farm to represent Guo and Lin "stated in a motion to strike, 'they [Guo and Lin] could have been hesitant to act because they turned the matter over to their insurers and attorneys to deal with'" the landslides.  *Id*. at ¶ 24.

On July 6, 2017, State Farm sent a reservation of rights letter to Guo and Lin taking the position that Guo and Lin "had a liability policy and that State Farm had no responsibility for the repair" of the landslides.  Plaintiffs allege that on January 14, 2020, State Farm contradicted that position, writing that "'winterization' [of the slide] or similar expenses . . . will be applied to reduce the available policy limits . . ."  *Id*. at ¶ 25.  Plaintiffs allege that based on State Farm's July 6, 2017 letter, "State Farm had no legal or contractual obligation to pay for winterization," but "its January 14, 2020 letter indicates that it had or will pay for winterization, an obligation that State Farm had previously disclaimed."  *Id*.  According to Plaintiffs, State Farm's agreement to pay for winterization of the landslides "is further, and conclusive evidence of State Farm's actions not as an insurer" of Guo and Lin "but, instead, as a party that has independently exercised care, custody, and control over the [landslides] and that is an independent tortfeasor as to the Joneses."  *Id*.

Additionally, Plaintiffs allege upon information and belief that State Farm or its agents, including counsel appointed by State Farm, advised Guo and Lin that State Farm would assist them "in funding the repair" of the landslides, "even though State Farm allegedly had no legal or contractual obligation to do so," which is further evidence that "State Farm assumed control" of the landslides.  *Id*. at ¶ 26.

Plaintiffs allege that between March 2017 and November 2019, they sent numerous letters and emails to Guo, Lin, and their attorneys, who were "hired and paid for by State Farm," notifying them of the landslides and asking them to repair and remediate the landslides.  Plaintiffs allege that Guo and Lin "took no action relative to" the landslides, "because State Farm had assumed responsibility for and control over" the landslides, and that "State Farm refused to act to remediate" the landslides.  *Id*. at ¶¶ 27, 28, 30, 34-39, 41, 42, 44, 46, 49, 50, 53, 55-61, 64-69.  Lin testified that she never saw Plaintiffs' correspondence, which Plaintiffs allege is evidence of "the fact that State Farm controlled the hill/repairs and maintenance."  *Id*. at ¶ 70.

Plaintiffs also allege upon information and belief that State Farm is paying counsel to

3

1    prosecute a cross-complaint that seeks indemnity and damages for repairs to the landslides on

2    behalf of Guo and Lin, "despite having no purported legal or contractual obligation to do so."  *Id.*

3    at ¶ 71.  Additionally, "State Farm is also paying counsel to prosecute a claim for trespass on the

4    hill against" the Joneses, "despite no purported legal or contractual obligation to do so."  *Id.*

5             **B.**    **Procedural History**

6            Plaintiffs filed the complaint on June 2, 2021 in which they allege three claims against

7    State Farm: 1) private nuisance; 2) trespass; and 3) negligence.  State Farm now moves to dismiss

8    the complaint.

9            In connection with its motion to dismiss, State Farm asks the court to take judicial notice

10   of six records related to a lawsuit filed in Contra Costa County Superior Court involving Plaintiffs,

11   Guo, and Lin (the "state court action"), discussed further below.  [Docket Nos. 12-1 (Def.'s

12   Request for Judicial Notice, "RJN"), 12-2 (Roberts Decl., June 24, 2021) Exs. A-F.]  After the

13   briefing was complete on the motion to dismiss, the court issued an Order to Show Cause why this

14   matter should not be stayed pending the outcome of the state court action.  [Docket No. 19.]  The

15   parties timely filed their responses to the Order to Show Cause.  [Docket Nos. 26, 28.]  On

16   December 1, 2021, while the issue of a stay was still pending, Plaintiffs filed a supplemental

17   response to the Order to Show Cause representing that the state court action settled.  [Docket No.

18   29.]  The court discharged the Order to Show Cause on December 29, 2021.  [Docket No. 30.]

19   **II.**    **LEGAL STANDARDS**

20           According to the caption of State Farm's motion to dismiss, State Farm seeks relief

21   pursuant to Rules 12(b)(6), failure to state a claim upon which relief can be granted, and 12(b)(7),

22   failure to join a party under Rule 19.  However, State Farm does not actually address Rule

23   12(b)(7) in its motion.[2]  Instead, it argues that the court lacks subject matter jurisdiction over

24   Plaintiffs' lawsuit and that the complaint fails to state a claim.  Mot. 11-17.  Accordingly, the court

25   will evaluate the motion under Rules 12(b)(1) and 12(b)(6).

26

27   ────────────────

28   [2] In its reply, State Farm argues that the defendants in the state court action, including Guo and Lin, are "necessary and indispensable to a full and complete resolution of this suit."  Reply 4.  The court declines to consider arguments raised for the first time on reply.

United States District Court
Northern District of California

### C.   Rule 12(b)(1)

A motion to dismiss filed pursuant to Rule 12(b)(1) is a challenge to the court's subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). A court will dismiss a party's claim for lack of subject matter jurisdiction "only when the claim is so insubstantial, implausible, foreclosed by prior decisions of th[e Supreme] Court, or otherwise completely devoid of merit as not to involve a federal controversy." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (citation and quotation marks omitted); *see* Fed. R. Civ. P. 12(b)(1). The challenging party may make a facial or factual attack challenging subject matter jurisdiction. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). A facial challenge asserts that "the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In contrast, a factual attack disputes "the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id*. at 1039. A factual challenge permits the court to look beyond the complaint, without "presum[ing] the truthfulness of the plaintiff's allegations." *White*, 227 F.3d at 1242 (citation omitted). Even the presence of disputed material facts "will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (citations omitted).

### D.   Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson*, 551 U.S. at 94 (citation omitted), and may dismiss a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc*., 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (quotation marks omitted). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556

5

U.S. at 678 (citation omitted).  In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001), overruled on other grounds by *Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

As a general rule, a court may not consider "any material beyond the pleadings" when ruling on a Rule 12(b)(6) motion.  *Lee*, 250 F.3d at 688 (citation and quotation marks omitted). However, "a court may take judicial notice of 'matters of public record,'" *id*. at 689 (citing *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)), and may also consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading," without converting a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment.  *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith*, 307 F.3d at 1125-26.  The court need not accept as true allegations that contradict facts which may be judicially noticed.  *See Mullis v. U.S. Bankr. Court*, 828 F.2d 1385, 1388 (9th Cir. 1987).

## III.   REQUEST FOR JUDICIAL NOTICE AND INCORPORATION BY REFERENCE

As noted, State Farm asks the court to take judicial notice of six records related to the state court action filed in Contra Costa County Superior Court involving Plaintiffs, Guo, and Lin.  RJN, Roberts Decl. Exs. A-F.

### A.  Legal Standard

A district court generally may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion.  *Branch*, 14 F.3d at 453.  If "matters outside the pleading are presented to and not excluded by the court," the court must treat the motion as a Rule 56 motion for summary judgment.  *See* Fed. R. Civ. P. 12(d).  "A court may, however, consider certain materials— documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment."  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  "Both of these procedures permit district courts to consider materials outside a complaint, but each does so for different

1   reasons and in different ways." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir.

2   2018).  The Ninth Circuit has cautioned courts about the appropriate use of judicial notice and the

3   incorporation by reference doctrine when ruling on Rule 12(b)(6) motions:

> The overuse and improper application of judicial notice and the
> incorporation-by-reference doctrine . . . can lead to unintended and
> harmful results. Defendants face an alluring temptation to pile on
> numerous documents to their motions to dismiss to undermine the
> complaint, and hopefully dismiss the case at an early stage. Yet the
> unscrupulous use of extrinsic documents to resolve competing
> theories against the complaint risks premature dismissals of plausible
> claims that may turn out to be valid after discovery. . . . If defendants
> are permitted to present their own version of the facts at the pleading
> stage—and district courts accept those facts as uncontroverted and
> true—it becomes near impossible for even the most aggrieved
> plaintiff to demonstrate a sufficiently "plausible" claim for relief.
> Such undermining of the usual pleading burdens is not the purpose of
> judicial notice or the incorporation-by-reference doctrine.

*Id.* (internal citations omitted).

Federal Rule of Evidence 201 governs judicial notice.  Under Rule 201, a court may take

judicial notice of "an adjudicative fact if it is 'not subject to reasonable dispute.'"  *Id.* at 999

(quoting Fed. R. Evid. 201(b)).  A fact is "not subject to reasonable dispute" if it is "generally

known," or "can be accurately and readily determined from sources whose accuracy cannot

reasonably be questioned."  Fed. R. Evid. 201(b).  While a court may take judicial notice of

matters of public record without converting a motion to dismiss into a motion for summary

judgment, it may not take judicial notice of disputed facts stated in public records.  *Lee*, 250 F.3d

at 690.  "Just because [a] document itself is susceptible to judicial notice does not mean that every

assertion of fact within that document is judicially noticeable for its truth."  *Khoja*, 899 F.3d at

999.  If a court takes judicial notice of a document, it must identify the specific fact or facts it is

noticing from the document.  *Id.*

In contrast, the incorporation by reference doctrine is "a judicially-created doctrine that

treats certain documents as though they are part of the complaint itself."  *Id.* at 1002.  This is to

prevent "plaintiffs from selecting only portions of documents that support their claims, while

omitting portions that weaken—or doom—their claims."  *Id.*  Incorporation by reference is

appropriate "if the plaintiff refers extensively to the document or the document forms the basis of

the plaintiff's claim." *Id*. at 1002 (quoting *Ritchie*, 342 F.3d at 907).  However, if a document "merely creates a defense to the well-pled allegations in the complaint, then that document did not necessarily form the basis of the complaint." *Id*.  Further, "the mere mention of the existence of a document is insufficient to incorporate the contents of a document." *Id*. (quoting *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010)).  The Ninth Circuit has instructed that "the doctrine is not a tool for defendants to short-circuit the resolution of a well-pleaded claim." *Id*.  Thus, "while a court "may assume [an incorporated document's] contents are true for purposes of a motion to dismiss under Rule 12(b)(6) . . . it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint." *Id*.; *see also id*. at 1014 ("The incorporation-by-reference doctrine does not override the fundamental rule that courts must interpret the allegations and factual disputes in favor of the plaintiff at the pleading stage.").

### B.      Exhibits A, B, E, and F

Exhibit A to State Farm's RJN is a copy of a complaint filed by Jeffrey M. Jones and Shannon B. Jones, Trustees of the Jeffrey & Shannon Jones Trust, in Superior Court of California, County of Contra Costa on June 22, 2017, Case No. C 17-01167.  The complaint alleges claims against Guo and Lin based on the same February 2017 landslides at issue in this case.  RJN Ex. A ¶¶ 11-15.  Exhibit B is a copy of the June 30, 2020 fourth amended complaint in the state court action; State Farm's counsel represents that it is the operative complaint.  Roberts Decl. ¶ 4.  The fourth amended complaint alleges that Guo and Lin "negligently and intentionally failed to manage and control their property, thereby causing the [land]slides at" the Joneses' property and "fail[ed] to act in a reasonable manner to control, stabilize, or repair" and "remediat[e]" the landslides.  RJN Ex. B at ¶¶ 45, 60.  It alleges claims for negligence, nuisance, trespass, declaratory relief, injunctive relief, intentional infliction of emotional distress, breach of contract, breach of the implied covenant of good faith and fair dealing, fraudulent concealment, intentional misrepresentation, and negligent misrepresentation.  It also adds defendants Emo-Gizella B. Hites, George Hites, and the George Hites and Emo-Gizella B. Hites Revocable Living Trust dated 07/23/1998, from whom the Joneses purchased 5945 Bruce Drive in 2016.  *Id*. at ¶¶ 4, 11, 13.

Exhibit E is a copy of tentative rulings issued by Contra Costa Superior Court in connection with motions set for hearing on September 25, 2020 in the state court action, and Exhibit F is a copy of the Contra Costa Superior Court docket in the state court action.  RJN Exs. E, F.  According to counsel, the docket reflects the pleadings and activities in the state court action and reflects that "the case is ongoing."  Roberts Decl. ¶ 8.

State Farm asks the court to take judicial notice of Exhibits A, B, E, and F.  It does not clearly set forth the basis for the request in its motion but includes details about the state court action and litigation in its Statement of Facts as background.  *See* Mot. 2-6.  While Plaintiffs do not object to the court's taking judicial notice of these materials, they argue generally that State Farm's arguments based on the materials are improper, misleading, and irrelevant.  Opp'n 7 n.1.

Federal courts may "take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to the matters at issue."  *U.S. ex rel Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992).  The court finds that Exhibits A and B contain matters of public record that are relevant to the issues before the court and are thus judicially noticeable.  However, the court does not take judicial notice of disputed facts stated in these documents.  Therefore, the court takes judicial notice of the existence of Plaintiffs' action in state court against Guo and Lin in which they allege claims in connection with the 2017 landslides and the fact that the operative complaint in the state court action alleges claims against Guo, Lin, and other defendants.

As to Exhibit F, the court takes judicial notice of the fact that the state court action was ongoing at the time State Farm filed the instant motion to dismiss.  As noted, Plaintiffs have since represented that the state court action settled.

Exhibit E is a copy of tentative rulings by Contra Costa Superior Court in the state court action.  State Farm does not explain the relevance of Exhibit E to the issues in this motion.  Accordingly, the court declines to take judicial notice of Exhibit E.

**C.     Exhibits C and D**

Exhibits C and D are copies of excerpts of the depositions of Lin and Guo, taken on February 26, 2020 and February 28, 2020, respectively, in connection with the state court action.

United States District Court
Northern District of California

1    RJN Exs. C, D.  State Farm notes that the complaint contains allegations about testimony by Lin

2    and Guo and argues that "Plaintiffs have materially misstated" their deposition testimony.  Mot. 2;

3    *see* Compl. ¶ 23.  Therefore, State Farm argues, the court may consider the excerpts of the

4    depositions under the incorporation by reference doctrine.  RJN 2; Mot. 2, 14.

5         Plaintiffs object to State Farm's request that the court consider the deposition excerpts "to

6    the extent that the request seeks to contradict the other well-pleaded facts" of their complaint.

7    Opp'n 11 n.4.

8         Incorporation by reference is appropriate "if the plaintiff refers extensively to the

9    document or the document forms the basis of the plaintiff's claim."  *Khoja*, 899 F.3d at 1002

10   (quotation omitted).  The complaint does not refer extensively to the depositions of Guo and Lin

11   and the transcripts do not form the basis of Plaintiffs' claims.  Instead, Plaintiffs cite portions of

12   the testimony to support their allegation that State Farm "took control and management" of the

13   landslides.  *See* Compl. ¶ 23.  State Farm does not contend that the complaint actually mis-quotes

14   Guo and Lin's testimony; instead, it takes issue with how the complaint characterizes that

15   testimony in support of its allegations that State Farm assumed responsibility for and control over

16   the landslides.  State Farm's role in connection with the landslides appears to be the key disputed

17   issue in this case, resolution of which is inappropriate at this stage.  *See id*. at 1003 (noting that its

18   admonition that "it is improper to assume the truth of an incorporated document if such

19   assumptions only serve to dispute facts stated in a well-pleaded complaint" is "consistent with the

20   prohibition against resolving factual disputes at the pleading stage.").  Incorporation by reference

21   is also inappropriate because State Farm seeks to have this court rely on the deposition transcripts

22   to adopt its version of facts at the pleading stage, which is improper.  *See id*. at 999.  Accordingly,

23   the court denies State Farm's request to consider the deposition excerpts under the incorporation

24   by reference doctrine.

25   **IV.    DISCUSSION**

26        **A.  Subject Matter Jurisdiction**

27        State Farm argues that the court lacks subject matter jurisdiction over this action.  Mot. 12-

28   13.

United States District Court
Northern District of California

"In civil cases, subject matter jurisdiction is generally conferred upon federal district courts either through diversity jurisdiction, 28 U.S.C. § 1332, or federal question jurisdiction, 28 U.S.C. § 1331." *Peralta v. Hispanic Business, Inc.,* 419 F.3d 1064, 1068 (9th Cir. 2005). Plaintiffs' complaint alleges subject matter jurisdiction based on diversity of citizenship. Compl. ¶ 10. Diversity jurisdiction lies in "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1). The complaint alleges that Plaintiffs are citizens of California and State Farm is a citizen of Illinois, and that the amount in controversy exceeds $75,000. Compl. ¶ 10.

State Farm does not dispute Plaintiffs' citizenship or amount in controversy allegations. Instead, it argues that Plaintiffs' complaint is a "direct action" within the meaning of 28 U.S.C. § 1332(c)(1) to which State Farm's insureds, Guo and Lin, have not been joined as defendants. According to State Farm, as a result the case lacks complete diversity of citizenship. Mot. 12-13.

Section 1332(c) provides that a corporation is "deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). However, different rules apply in "direct action[s]" against an insurer:

> [I]n any direct action against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of—
>
> > **(A)** every State and foreign state of which the insured is a citizen;
> >
> > **(B)** every State and foreign state by which the insurer has been incorporated; and
> >
> > **(C)** the State or foreign state where the insurer has its principal place of business . . .

28 U.S.C. § 1332(c)(1). "In other words, in a 'direct action,' an insurer can, for diversity of citizenship purposes, be deemed a citizen of up to three different states: the state of its incorporation, the state of its principal place of business, and the state of its insured." *Mezzetti v. State Farm Mut. Auto. Ins. Co.*, 346 F. Supp. 2d 1058, 1062 (N.D. Cal. 2004). Section 1332(c)(1) "was enacted in 1964 specifically to eliminate from diversity jurisdiction tort claims in which both

the injured party and the tortfeasor are local residents, but which, under state 'direct action' statutes, are brought against the tortfeasor's foreign insurance carrier without joining the tortfeasor as a defendant." *Beckham v. Safeco Ins. Co. of Am.*, 691 F.2d 898, 901 (9th Cir. 1982).

Although State Farm's argument is not clearly stated, it appears to take the position that this is a direct action within the meaning of section 1332(c)(1), and that as a result, State Farm is a citizen of the same state(s) as its insureds, Guo and Lin, and diversity of citizenship does not exist. Notably, the complaint does not allege the citizenship of Guo and Lin and State Farm provides no evidence or argument about their citizenship. *See* Mot. 13. The argument fails on that basis.

However, even assuming that State Farm is a citizen of the same state(s) as Guo and Lin, the argument is not persuasive. "Courts have uniformly defined the term 'direct action' as used in [section 1332(c)(1)] as those cases in which a party suffering injuries or damage for which another is legally responsible is entitled to bring suit against the other's liability insurer *without joining the insured or first obtaining a judgment against him*." *Beckham*, 691 F.2d at 901-02 (emphasis added). Such actions are not permitted in California. *See* William W. Schwarzer, A. Wallace Tashima & James M. Wagstaffe, Federal Civil Procedure Before Trial § 2:1305 (noting that "direct actions" are "*not* permitted in California or most other states"). Instead, under California Insurance Code section 11580(b)(2), which is referred to as California's "direct action" statute, *see Mezzetti*, 346 F. Supp. 2d at 1062 (collecting cases), an injured party is required "to obtain a judgment against an insured *before* bringing suit against the insurer." *Id*. at 1063 (emphasis in original).[3] As a result, "section 11580(b)(2) is not a 'direct action' statute under 28 U.S.C. § 1332(c)(1)." *Id*. at 1063. Further, "[b]ecause 'direct actions' are causes of action wherein the

---

[3] California Insurance Code section 11580(b)(2) provides that all insurance policies issued in California must contain "[a] provision that whenever judgment is secured against the insured [ ] based upon bodily injury, death, or property damage, then an action may be brought against the insurer on the policy and subject to its terms and limitations, by such judgment creditor to recover on the judgment." Cal. Ins. Code § 11580(b)(2). "Under the section, if the policy does not actually contain the required provision, it is construed as if it did so. A direct action under section 11580 is a contractual action on the policy to satisfy a judgment up to policy limits." *Wright v. Fireman's Fund Ins. Companies*, 11 Cal. App. 4th 998, 1015 (1992). "Under section 11580 the judgment against the insured is clearly an essential element of the claimant's right to recover against the insurer." *Id*.

United States District Court
Northern District of California

1    liability sought against insurers could be imposed against their insureds, suits against insurers for

2    *their own* alleged misconduct are not 'direct actions'" under section 1332(c)(1).  *Id*. at 1064

3    (emphasis in original) (citing *Beckham*, 691 F.2d at 902).[4]

4           Here, Plaintiffs do not seek to hold State Farm liable for its coverage obligations under the

5    policy it issued to its insureds, Guo and Lin.  Nor do they "seek[ ] to impose liability on [State

6    Farm] for the negligence of" its insureds, Guo and Lin.  *See Beckham*, 691 F.2d at 902.  Rather,

7    Plaintiffs allege that "because State Farm is in control of" the landslides, "State Farm is

8    responsible for them, not as an insurer, but as an independent tortfeasor."  Compl. ¶¶ 4, 22 ("Once

9    State Farm took control of the slides, it undertook obligations and duties to the Joneses outside the

10   scope of an insurer and as an independent tortfeasor.").  Since Plaintiffs "seek to impose liability

11   on State Farm for its own conduct," including its failure to remediate the landslides, this is not a

12   "direct action" under 28 U.S.C. § 1332(c)(1).  *See Mezzetti*, 346 F. Supp. 2d at 1064 (holding that

13   action against insurer for "alleged representation that it did not insure" automobile that injured the

14   plaintiff in an accident was not a direct action under section 1332(c)(1) because the plaintiff

15   sought to impose liability on insurer for its own conduct); *see also Searles v. Cincinnati Ins. Co*.,

16   998 F.2d 728, 728 (9th Cir. 1993) (holding that a "bad faith insurance action [against an insurer] is

17   not a 'direct action' under § 1332(c)(1)").  Accordingly, section 1332(c)(1) does not preclude the

18   court's exercise of diversity jurisdiction over this case.

19          **B.      Failure to State a Claim**

20                 **1.      Claim Splitting**

21          State Farm argues that Plaintiffs' suit constitutes "an improper splitting of a cause of

22   action" and must be dismissed.  Mot. 11.

23          The doctrine against claim splitting provides that a party is "not at liberty to split up his

24   demand, and prosecute it by piecemeal, or present only a portion of the grounds upon which

25

26   _____

27   [4] State Farm also argues that Plaintiffs' action violates California Insurance Code section
     11580(b)(2).  Mot. 14-15.  Plaintiffs do not seek to hold State Farm liable for Guo and Lin's
     actions in this lawsuit; rather, they are suing State Farm for their own allegedly tortious conduct.
28   Therefore, this is not an action "to recover on" a judgment obtained by Plaintiffs against State
     Farm's insureds under section 11580(b)(2).

United States District Court
Northern District of California

13

special relief is sought, and leave the rest to be presented in a second suit, if the first fail.  There would be no end to litigation if such a practice were permissible." *United States v. Haytian Republic,* 154 U.S. 118, 125 (1894) (quoting *Stark v. Starr*, 94 U.S. 477, 482 (1876)).  The "main purpose behind the rule preventing claim splitting is 'to protect the defendant from being harassed by repetitive actions based on the same claim.'" *Clements v. Airport Auth. of Washoe Cty.,* 69 F.3d 321, 328 (9th Cir. 1995).  Plaintiffs have "no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant." *Adams v. Cal. Dep't of Health Servs.*, 487 F.3d 684, 688 (9th Cir. 2007) (citations omitted), *abrogated on other grounds by Taylor v. Sturgell,* 553 U.S. 880 (2008).  Courts have "broad discretion to control their dockets" and may exercise their discretion "to dismiss a duplicative later-filed action, to stay that action pending resolution of the previously filed action, to enjoin the parties from proceeding with it, or to consolidate both actions." *Id.*

To determine whether a suit is duplicative, the Ninth Circuit borrows from the test for claim preclusion.  *Id.*; *see Adobe Sys. Inc. v. Wowza Media Sys., LLC*, 72 F. Supp. 3d 989, 994 (N.D. Cal. 2014) (claim splitting "is a sub-species of the doctrine of claim preclusion.").  Courts "examine whether the causes of action and relief sought, as well as the parties or privies to the action, are the same." *Adams*, 487 F.3d at 689.  "To ascertain whether successive causes of action are the same, [courts] use the transaction test, developed in the context of claim preclusion." *Id.* "Whether two events are part of the same transaction or series depends on whether they are related to the same set of facts and whether they could conveniently be tried together." *Id.*  Courts examine four criteria in applying the transaction test:

> (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.

*Id.* (quoting *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201-02 (9th Cir. 1982)).  "The last of these criteria is the most important." *Costantini*, 681 F.2d at 1202.

State Farm's analysis of the test for claim preclusion is entirely cursory.  Without

1   elaboration or citation to supporting authority, State Farm asserts that "the causes of action [in this

2   case] are entirely duplicative of those pursued in the underlying action and Mr. Guo and Ms. Lin

3   stand in privity of contract with State Farm."  Mot. 12.

4           In response, Plaintiffs argue that claim splitting is not at issue because they are suing

5   different defendants in different lawsuits.  Opp'n 14 (citing *DKN Holdings LLC v. Faerber*, 61

6   Cal. 4th 813, 825 (2015)).  Under California law, "claim preclusion applies only to the relitigation

7   of the same cause of action *between the same parties* or those in privity with them."  *DKN*, 61 Cal.

8   4th at 825 (emphasis in original); *see Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497,

9   508 (2001) (federal courts apply "the [claim preclusion] law that would be applied by state courts

10  in the State in which the federal diversity court sits").  "As applied to questions of preclusion,

11  privity requires the sharing of an identity or community of interest, with adequate representation

12  of that interest in the first suit, and circumstances such that the nonparty should reasonably have

13  expected to be bound by the first suit."  *Id*. at 826 (quotation marks and citation omitted).

14  Plaintiffs argue that Guo and Lin are not in privity with State Farm because "[t]hey are blaming

15  each other for the failure to fix the" landslides, citing their allegations that Guo and Lin testified

16  that they had "turned the matter [over] to the insurance company" and that State Farm "took over

17  the matter."  Opp'n 15 (citing Compl. ¶ 23).  Plaintiffs further note that State Farm has reserved

18  rights as to coverage related to the landslides, claiming that Guo and Lin are responsible for fixing

19  the landslides at the same time that Guo and Lin believe that State Farm is responsible.  *See*

20  Compl. ¶ 25.  Accordingly, Plaintiffs argue, there is an actual conflict of interest between Guo and

21  Lin and State Farm that precludes a finding of privity for purposes of claim preclusion.  Opp'n 15-

22  16 (citing *State Farm Fire and Cas. Co. v. Engstrom*, 933 F.2d 772, 773 (9th Cir. 1991) (affirming

23  finding that insurer was not in privity with insured due to "manifest conflict" between the

24  parties)).

25          On reply, State Farm does not dispute that California law applies to issues of claim

26  preclusion but argues that it is "in privity of contract with Mr. Guo and Ms. Lin and is defending

27  the underlying litigation."  Reply 14.  In support, it cites *American Mutual Liability Insurance*

28  *Company v. Superior Court*, 38 Cal. App. 3d 579, 591-92 (1974), arguing that it stands for the

1    proposition that "the intramural relationship comprising the whole shares a common purpose of

2    defeating the Joneses' claims in Contra Costa county based on the insurer-insured relationship."

3    Reply 14; *see also* Reply 13 (discussing *American Mutual*).  However, *American Mutual* does not

4    address the issue of privity between an insurer and its insureds for purposes of the claim

5    preclusion and claim splitting analysis.  Instead, *American Mutual* addresses the relationship

6    between an insurer, its insured, and the attorney retained by the insurer to defend its insured in the

7    context of the attorney-client privilege.  38 Cal. App. 3d at 594-96.[5]  It is of little assistance here.

8         State Farm provides no other analysis of the issue of privity and cites no authority that

9    supports finding privity in these circumstances.  The court cannot analyze arguments that are not

10   developed.  As State Farm is the party asserting claim preclusion "as a bar to further litigation," it

11   "bears the burden of proving that the requirements of the doctrine are satisfied."  *State Comp. Ins.*

12   *Fund v. ReadyLink Healthcare, Inc.*, 50 Cal. App. 5th 422, 448 (2020).  State Farm has failed to

13   do so.  Accordingly, it has not met its burden of demonstrating that Plaintiffs' lawsuit should be

14   dismissed or stayed due to improper claim splitting.

15                    **2.      Whether Plaintiffs Have Stated Claims Against State Farm**

16        Finally, State Farm argues that "there is no legitimate legal or factual basis for" Plaintiffs'

17   claims against State Farm as an independent tortfeasor.  It contends that it is well-established that

18   "absent extraordinary circumstances where an insurer acts outside the typical role as insurer, no

19   cause of action for negligence is available as a matter of law, even in favor of the insured."  Mot.

20   14-15 (citations omitted).  *See, e.g., Adelman v. Associated Int'l Ins. Co.*, 90 Cal. App. 4th 352,

21   356 (2001) (holding that since insurer owed no duty of care to non-insured third parties they

22   lacked standing to bring a tort claim against the insurer "for its negligent investigation and

23

24   [5] In analyzing whether the insured could waive the attorney-client privilege on behalf of the
     insurer, the court in *American Mutual* examined the nature of the relationship between the parties.
25   It noted that "[i]n the insured-insurer relationship, the attorney characteristically is engaged and
     paid by the carrier to defend the insured," and "[b]oth the insured and the carrier have a common
26   interest in defeating or settling the third party's claim." *Id*. at 591-92.  It explained that "[i]n such
     a situation, the attorney has two clients whose primary, overlapping and common interest is the
27   speedy and successful resolution of the claim and litigation," and that "[t]he three parties may be
     viewed as a loose partnership, coalition or alliance directed toward a common goal, sharing a
28   common purpose which lasts during the pendency of the claim or litigation against the insured."
     *Id*. at 592.

United States District Court
Northern District of California

adjustment of a claim filed by an insured party"; noting that "[a]n insured can recover in tort against an insurer for the improper handling of a claim *only* upon a showing that the insurer acted in bad faith" (emphasis in original)).  State Farm disputes that Plaintiffs can bring direct claims for private nuisance, trespass, and negligence against State Farm under the authority cited in the complaint, *Teague*, 168 Cal. App. 3d at 1148.  Mot. 16; *see* Compl. ¶ 22.

Plaintiffs respond that *Teague* supports their claims because State Farm "act[ed] as a tortfeasor outside the scope of its coverage obligations under the State Farm Policy by voluntarily assuming control over the [landslides] and, thereby, tortiously damaging the Joneses."  Opp'n 25.

In *Teague*, an employee sustained multiple injuries while at work, including "trauma to his brain."  He "developed a seizure disorder and severe psychiatric problems" following the incident and filed a workers' compensation claim with his employer's insurance carrier.  168 Cal. App. 3d at 1150.  He subsequently filed a complaint against the insurer and another defendant, Telestar Investigations ("Telestar"), alleging that during the pendency of his workers' compensation claim, the insurer "became aware of the fact that [his] job-related injuries caused a severe psychiatric and seizure disorder which could be triggered by surveillance activity" by the insurer or its agents, and that the insurer was aware that delays in medical treatment or payment of benefits "could precipitate psychotic episodes and/or seizure activity."  *Id*.  The plaintiff alleged a claim for intentional infliction of emotional distressed based on the insurer's alleged "outrageous conduct," including hiring Telestar to surveil him "with the purpose of harassing and humiliating him."  Telestar's actions included illegally entering the plaintiff's garage and vehicle.  The conduct also included the insurer's refusal to pay benefits even after the workers' compensation proceedings terminated in the plaintiff's favor.  *Id*. at 1150-51.  The trial court dismissed the claim on the ground that the plaintiff "failed to allege sufficient facts to show that the surveillance was totally unnecessary to and far beyond the bounds of normal investigation and defense of a worker's claim."  *Id*. at 1153 (quotation marks omitted).

The court of appeals reversed.  The court began its analysis by noting that workers' compensation insurance carriers are usually shielded from third party liability because they are defined as having employer status under the California Workers' Compensation Act.  *Id*. at 1151.

17

United States District Court
Northern District of California

1     The plaintiff argued on appeal that the insurer "should be denied protected status because its

2     conduct was so outrageous as to take it out of the workers' compensation scheme" for three

3     reasons: 1) the insurer's delays in payment of benefits and provision of medical treatment led to

4     the plaintiff's psychotic occurrences and seizures; 2) since the nature of his injury did not "lend

5     itself to verification by investigative observation," the surveillance "could therefore have had no

6     legitimate purpose"; and 3) the investigation included an unlawful entry into his garage and

7     vehicle even though the insurer knew "that such activity would likely cause severe emotional and

8     mental distress." *Id.* The court rejected all three grounds for circumventing the workers'

9     compensation scheme, in part because "assertions of delay in the payment of benefits or in the

10     providing of medical treatment do not describe conduct which is deemed outrageous and extreme"

11     and "the investigation of claims is an important function of workers' compensation insurance

12     carriers." Accordingly, it held that the plaintiff had not stated a claim for intentional infliction of

13     emotional distress against the insurer. *Id.* at 1151-53. However, the court held that the plaintiff's

14     complaint, which included allegations that the investigator had illegally entered the plaintiff's

15     vehicle and the garage area of his residence, "ha[d] set forth sufficient facts to establish another

16     intentional tort which exceeds the bounds of acceptable investigative practice—that of trespass."

17     It held that "the intentional tort of trespass does not fall within the scope of behavior which may

18     be reasonably expected of insurers" and "goes beyond the normal role of an insurer in a

19     compensation scheme intended to protect the worker." *Id.* at 1153 (emphasis added) (quoting

20     *Unruh v. Truck Ins. Exch.*, 7 Cal. 3d 616, 630 (1972)). Accordingly, it remanded to give the

21     plaintiff leave to amend the complaint to state a claim for trespass. *Id.*

22        *Teague* is distinguishable and does not support Plaintiffs' tort claims against State Farm.

23     In *Teague*, the court found that the insurer's alleged trespass was an "intentional tort which

24     exceeds the bounds of acceptable investigative practice" and "[did] not fall within the scope of

25     behavior which may be reasonably expected of insurers." 168 Cal. App. 3d at 1153. Therefore,

26     the plaintiff could challenge the conduct outside of the exclusive remedy provisions of the

27     workers' compensation scheme. In contrast, Plaintiffs' complaint alleges no affirmative actions

28     by State Farm that fall outside "the scope of behavior which may be reasonably expected of

insurers." To the contrary, the allegations support that State Farm acted in its capacity as the contracted insurer of Guo and Lin, including hiring counsel to represent Guo and Lin under a reservation of rights, hiring experts and contractors, obtaining proposals for repair and remediation of the landslides, and investigating the claims against them. *See* Compl. ¶¶ 23, 24, 45, 52, 54, 62, 63. Plaintiffs offer no authority that this conduct falls outside the "bounds of normal investigation and defense" of insurance claims and thus supports tort liability. *See Teague*, 168 Cal. App. 3d at 1153.

Plaintiffs argue that "State Farm controls a nuisance, is trespassing, and has negligently damaged the Joneses," and that this constitutes conduct "outside of the coverage, claims, and investigative boundaries of State Farm's insurance coverage obligations under the State Farm Policy." Opp'n 18-19. According to Plaintiffs, this conduct includes State Farm taking the position that it "ha[s] no responsibility for the repair" of the landslides while acting contrary to that position, including paying for "winterization" of the landslides and "paying its appointed counsel to prosecute a cross-complaint . . . filed on behalf of the Guo/Lin parties that seeks indemnity and damages for repair" of the landslides. *See id.* at 19-20; Compl. ¶¶ 25, 71. Essentially, Plaintiffs appear to contend that actions taken by an insurer in contradiction to a stated coverage position take the insurer's conduct outside "the scope of behavior which may be reasonably expected of insurers," and expose the insurer to tort liability. However, they offer no authority for their legal contention, nor do they cite authority to support that State Farm's alleged conduct fell outside the "normal investigation and defense" of insurance claims. *See Teague*, 168 Cal. App. 3d at 1153.

Plaintiffs also point to their allegations that Guo and Lin "believe" that State Farm "took control and management of the slides" and that counsel for Guo and Lin wrote in a motion that Guo and Lin were "hesitant to act because they turned the matter over to their insurers and attorneys to deal with . . ." Opp'n 19; Compl. ¶¶ 23, 24. Plaintiffs do not explain the significance of statements or beliefs held by an insured about the role of their insurer.

In the absence of any allegations of conduct by State Farm that fall outside of the "normal investigation and defense" of an insurance claim, the court concludes that *Teague* does not support

the relief Plaintiffs seek.  Plaintiffs offer no other authority for their claims, and the court's own research yielded none.  Accordingly, Plaintiffs' nuisance, trespass, and negligence claims must be dismissed.

## V.      CONCLUSION

For the foregoing reasons, State Farm's motion to dismiss is granted.  Plaintiffs' complaint is dismissed with leave to amend to add allegations that State Farm acted outside the scope of behavior which may be reasonably expected of insurers.  Any amended complaint must be filed within 14 days of the date of this order.

**IT IS SO ORDERED.**

Dated: January 21, 2022



Donna M. Ryu
United States Magistrate Judge